C. W. Stoll v. Commissioner.
C. W. Stoll v. Commissioner
Docket No. 6980.
United States Tax Court
1946 Tax Ct. Memo LEXIS 101; 5 T.C.M. (CCH) 731; T.C.M. (RIA) 46202; August 19, 1946
*101 A partnership of which petitioner was a member loaned money at interest to a group, two members of which were minor sons of the petitioner, to enable them to purchase a cargo boat. The transaction resulted in profit to the participants. Held, the sons' share of the income was not attributable to the petitioner's labor or resources but represents income properly reportable by them. 2. An amount paid by way of compensation for injury to the property of another held not deductible under section 23 (e)(3). 3. Credit for foreign taxes under section 131, Internal Revenue Code, allowed where respondent had granted petitioner credit under that section for other foreign taxes in the same taxable year. 4. Loss sustained by expiration of an oil lease in the taxable year held deductible from gross income. Edgar W. Pugh, Esq., 3653 Penobscot Bldg., Detroit, Mich., for the petitioner. Clarence E. Price, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion ARUNDELL, Judge: This proceeding involves a deficiency of $10,274.71 in income tax for the calendar year 1941. Four issues are raised: (1) Was the short-term capital gain on the sale of the steamer, Belgium, the income of petitioner or was the amount in question properly reportable as income of his sons? (2) Did the respondent err in disallowing a casualty loss under section 23 (e) (3), Internal Revenue Code, for certain property damages paid by *103 petitioner as a result of a collision between petitioner's schooner and the schooner "Lilray"? (3) Did the respondent err in failing to allow certain credit for income tax paid by petitioner to a foreign country? (4) Did the respondent err in disallowing a loss deduction of $1,740 in connection with an investment in an oil and gas lease? Issue I Findings of Fact. - The petitioner, C. W. Stoll, is an individual residing at Escanaba, Michigan. His income tax return for the calendar year 1941 was filed with the collector of internal revenue for the district of Michigan. In 1941, the petitioner owned a one-third interest in the partnership of Sawyer-Stoll Timber Company. The other partners were E. P. Sawyer and C. J. Sawyer, who each owned a one-third interest. Petitioner also had interests in other business organizations operating in Michigan and in Canada. The Sawyer-Stoll Timber Company at various times financed transactions involving the purchase, operation, and sale of ships. Members of the partnership were frequently interested as individuals in these transactions. On March 12, 1941, an agreement was entered into for the acquisition of the steamship "Belgium". It provided *104 that the group named below had decided to enter into a joint venture, in the proportions noted opposite their names, for the purpose of purchasing, reconditioning and outfitting the above ship. When the ship was ready for service it was to be turned over to a company organized for that purpose, the capital stock of which was to be subscribed for by each member in accordance with the interest noted opposite his name. Payments for the stock were to be in cash to insure the entire purchase price of the vessel. The vessel was to be sold to the corporation at actual cost of purchase, and repair and outfitting. It was further provided that if for any reason the vessel was disposed of in some other way, any profit or loss incurred was to be shared in the proportions noted. The proportionate interests of the individuals were as follows: Percent
Ole T. Olsen
25
Orin W. Angwall
25
E. P. Sawyer
16 2/3
C. J. Sawyer
16 2/3
Wm. M. Stoll
8 1/3
C. Stewart Stoll
8 1/3
The agreement was signed by the first four individuals named but it was not signed either by Wm. M. Stoll or C. Stewart Stoll. Ole T. Olsen and Orin W. Angwall were not connected with the Sawyer-Stoll *105 partnership but were good boatmen and had previously had dealings with the members of that partnership. E. P. Sawyer and C. J. Sawyer were members of the Sawyer-Stoll Timber Company. Wm. M. Stoll and C. Stewart Stoll, named in the above agreement, were minor sons of the petitioner. The petitioner's sons were about 17 and 20 years of age, respectively, in 1941. They lived with their mother who was divorced from C. W. Stoll. The petitioner was not responsible for their maintenance and support. Both of the boys had sailed quite a lot but, in the main, only for pleasure. The purchase transaction was discussed with the boys and C. Stewart Stoll made two trips to Toledo prior to the actual purchase to examine the vessel. All of the money used for the purchase and repair of the "Belgium" was advanced by the Sawyer-Stoll Timber Company. Notes were not given. The timber company looked to the vessel as security and to its owners for repayment. Interest was paid to the timber company on the advances. The financial transactions were conducted by the petitioner for the partnership and by Olsen for and in behalf of the joint venturers in the purchase. In acquiring the ship it had been the intention *106 of the interested parties that it would be used for the purpose of hauling pulpwood for the Sawyer-Stoll Timber Company at prevailing rates, and for hauling other cargo when not so engaged. Due to the receipt of an offer which was considerably in excess of the original cost, the parties decided to sell the vessel and did so in August, 1941, at a profit of $70,000. Out of the proceeds from the sale of the vessel and salvage the venturers repaid the timber company for its loans and advances, including interest. They realized a net profit of $70,000. Both Olsen and Angwall had obtained personal loans from the timber company and by agreement of the parties the Sawyer-Stoll Timber Company was used as a depository for the profit. The timber company divided the profit into the proportionate shares of the six ventures, deducted the sums owed to it by the respective participants and set up an account payable for each of them. The accounts payable to C. Stewart Stoll and to Wm. M. Stoll reflected that a credit had been entered for each of them. Up to July 13, 1943, the timber company had debited the account of Wm. M. Stoll with $612.34 and $27.18 paid to the collector of internal revenue on *107 his tax liability for 1941 and 1942. In 1944 and 1945, William withdrew amounts aggregating more than $2,000. He had deposited other sums with the company to be credited to his account. C. Stewart Stoll was in the Marine Corps in 1942 and 1943 and he sent $25 per month from his service pay to the partnership for credit to his account. In addition to debts for payments to the collector of internal revenue his account reflected a withdrawal of $800 in 1943. C. Stewart Stoll and Wm. M. Stoll were bona fide participants in the ventures and were accepted and treated as such by the other members of the group. The respondent has determined that the petitioner is the owner of the 16 2/3 per cent of the profits from the sale of the "Belgium" which was reported as income to his sons. Opinion. - The respondent has determined that the petitioner is chargeable under section 22(a), Internal Revenue Code, with the receipt of 16 2/3 per cent of the profits arising from the sale of the "Belgium". The amount in question, $11,433.36, represents short-term capital gain. The petitioner asserts that the profits belong to his sons, coming to them from their participation in a *108 partnership or joint venture in which he had no interest. The situation does not present the usual family partnership arrangement with which we are so familiar. There is no claim that a partnership existed between petitioner and his sons. The query is whether the arrangement, in so far as petitioner and his sons were concerned, was without substance so that in reality all that it amounted to was a device for funneling to the sons income or profits that were actually the fruits of petitioner's own labor or resources. If so, the mere formalism of the transaction must be disregarded and the profits taxed to him who earned or created the right to receive and enjoy them. Two of the timber company partners joined in the undertaking. The petitioner did not join and was, individually, in no way connected with it. C. Stewart Stoll and Wm. M. Stoll were minors but nonetheless they entered into the transaction and, although neither of them signed the agreement, they regarded themselves as bound by it; they were treated by the other parties as bona fide participants in the project, and they participated in the return therefrom. There is no evidence in this case which indicates that the sons *109 were mere nominees of their father. True it is that they might have been able to avoid their obligations, but the fact remains that they were accepted into the business by the other parties and they participated in the transaction along with the others. None of the members contributed any capital whatsoever. Olsen apparently devoted considerable time to the project but the evidence discloses that he received approximately $1,500 in salary which was charged as an expense and paid out of the proceeds of the sale. The petitioner's general credit was in no way involved in the transaction. The loan had been obtained from a partnership of which he was a member but which was not subject to his absolute control since he owned but a one-third interest therein. Moreover, the evidence discloses that the petitioner was not responsible for the maintenance and support of his sons at any time material to this case. Even if he were, we think there is considerable doubt that the petitioner could have ever been called upon to make good upon their commitments had the transaction resulted in failure and loss. Certainly the petitioner would have been in no position to claim a tax benefit other than his *110 proportionate share of a bad debt that might have arisen as a result of the timber company's loan. In the circumstances, we think the arrangement of the parties may not be disregarded for want of substance. Nor may it be concluded that the petitioner's activities or resources gave rise to the income in question. We hold that the respondent erred in taxing the gains to the petitioner. Issue II Findings of Fact. - In 1941, petitioner was the owner of the pleasure schooner "Mindemoya". In July of that year his son, C. Stewart Stoll, who was a minor at that time, attempted to take the vessel away from dock under sail rather than to use the auxiliary power with which the schooner was equipped. In the course of the maneuver the wind stirred the schooner and it collided with another vessel tied to the dock. The "Mindemoya" was only slightly damaged, but the docked vessel was damaged to some extent and in 1941 the petitioner paid $2,650 to its owner for the damages. The petitioner claimed a deduction in that amount under section 23(e)(3) of the Internal Revenue Code as a casualty loss. The respondent has disallowed the deduction. By stipulation the petitioner *111 has agreed that his income should be increased by the amount of $1,508.91, representing a loss deduction claimed by him in his return in connection with a different collision. Opinion. The petitioner seeks a casualty loss deduction under section 23(e)(3), Internal Revenue Code, [1] for the sum of $2,650, representing damages paid by him in 1941. The payment was occasioned by a collision between petitioner's pleasure schooner and that owned by one R. M. Ranson. Petitioner takes the view that the accident occurred by reason of wind or by an act of God. *112 We have repeatedly held that payments by a taxpayer to another person by way of compensation for injury to the person are not deductible under section 23(e)(3). B. M. Peyton, 10 B.T.A. 1129; Samuel E. Mulholland, 16 B.T.A. 1331, and W. S. Dickason, 20 B.T.A. 496. In the Peyton case, supra, we stated that the statute only allows deductions for losses of property belonging to the taxpayer and that we did not construe money paid to the injured parties as being a loss of the taxpayer's property within the intendment of the statute. We pointed out that had Congress desired to extend the statute to cover such a case, it would have been an easy task to do so. Here the petitioner seeks deduction for an amount paid to another as damage for injury to property. The situation is the same as if the payment had been for injury to the person and the same rule applies. In L. Oransky, 1 B.T.A. 1239, the taxpayer was denied a deduction for amounts paid to a widow by way of damages in connection with her husband's death. We can only conclude that the payments here in question are not losses of the taxpayer's property within the meaning of section *113 23(e)(3) and, accordingly, we sustain the determination of the Commissioner. Issue III Findings of Fact. - In his income tax return for 1941, filed on the cash receipts and disbursements basis, the petitioner claimed a credit against the United States tax under section 131 of the Internal Revenue Code for the sum of $1,483.42 paid as taxes to Canada. (This figure is adopted by both parties but see footnote. [2]) These Canadian taxes were paid in 1941 but petitioner was on an accrual basis for purposes of foreign tax credit. Form 1116 was attached to his return. The amount here involved was petitioner's proportionate share of Canadian taxes paid by a partnership of which he was a member. In his deficiency notice the respondent allowed a credit for $1,170.59. The petitioner alleged error in his original petition but on brief has abandoned this adjustment. By an amendment to his petition the petitioner asserts that he is entitled to a further and additional credit based on income taxes in the total amount of $3,107.31, representing Canadian income taxes which accrued against him in 1941. Payments totaling that sum were made as follows: March 31, 1942, $2,367.87; *114 April 14, 1942, $614.15, and February 19, 1944, $125.29. These Canadian taxes are separate and apart from those claimed on the petitioner's return for 1941. The petitioner did not claim a deduction from gross income for the taxes in question. Opinion. - By an amendment to the petition the petitioner claimed the taxes in controversy as a credit against his United States tax liability for 1941. The petitioner's income tax return for 1941, with Form 1116 thereto attached, coupled with the fact that the respondent has allowed him the benefit of a credit in that year under section 131, Internal Revenue Code, for other taxes paid to a foreign country, seem to establish that the petitioner is not only entitled to the same treatment for these further taxes but must use the same method of obtaining credit for them in such taxable year. See Regulations 103 noted in the margin. [3] Hence, the Commissioner's contention that the petitioner has failed to make an election between a credit for the taxes under section 131 and a deduction *115 from gross income under section 23(c)(2) (see W. K. Buckley, Inc., 5 T.C. 787) is without merit. The petitioner did not claim a deduction from gross income for any of the taxes in question. The evidence indicates that the taxes for which the petitioner seeks additional credit are separate and distinct from those for which credit has been granted and the amount, $3,107.31, is not questioned, nor is it questioned that the taxes accrued in 1941. The respondent's remaining point has to do with the question of whether the petitioner was on an accrual basis for foreign tax purposes. At the hearing petitioner testified that he was on an accrual basis for purposes of section 131. The report of the Revenue Agent was introduced. Referring to the three members of the Stoll-Sawyer Timber Company, it stated: *116 Form 1116 was filed by each individual which is attached to the returns. In Schedule B thereof in answer to the date of payment, it is indicated that the claim is based on accrual. Therefore, credit is determined based on accrual. The record affords no evidence whatsoever to the contrary. Turning again to the Regulations, [4] it is to be noted that once a taxpayer has elected to use an accrual method for the purpose of foreign taxes, the same method must be followed in returns for all subsequent years. In the circumstances, we think the taxpayer must be upheld in his claim for credit for the taxes in question in 1941. *117 Issue IV Findings of Fact. - By an assignment of a five-year lease dated April 3, 1936, the petitioner in 1938 acquired from Cecil P. Hutton and Ethyl Hutton, his wife, a 1/16 working interest, subject to certain overriding royalties, on certain described oil property. The lease expired April 5, 1941. The cost of the lease was $1,740 and a loss in that amount was sustained by him in the taxable year. By an amendment to the petition the petitioner seeks a loss deduction representing the entire investment in the oil property. The respondent denies that he is entitled to any deduction on account thereof. Opinion. - The parties have stipulated that the oil lease in question did exist and that it expired April 5, 1941. At the hearing the respondent questioned only its cost, the matter having been brought up for the first time by way of an amended petition. The evidence has satisfied us that the cost to petitioner was $1,740, and that he is entitled to a deduction from gross income in the taxable year for that sum. Decision will be entered under Rule 50. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * * * *
(e) Losses by Individuals. - In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise - * * * * *
(3) of property not connected with the trade or business, if the loss arises from fires, storms, shipwreck, or other casualty, or from theft. No loss shall be allowed as a deduction under this paragraph if at the time of the filing of the return such loss has been claimed as a deduction for estate tax purposes in the estate tax return. * * * * *↩
2. Form 1116 attached to petitioner's return and filed in support of the credit in question indicates that a credit of $1,383.41 was claimed.↩
3. Regulations 103: Sec. 19.131-1. * * * * *
If a taxpayer signifies in his return his desire to claim a credit for taxes, such action will be considered to apply to income, war-profits, and excess-profits taxes paid to all foreign countries and possessions of the United States, and no portion of any such taxes shall be allowed as a deduction from gross income.↩
4. SEC. 19.131-6. When credit for taxes may be taken. - The credit for taxes provided by section 131 (a) may ordinarily be taken either in the return for the year in which the taxes accrued or in which the taxes were paid, dependent upon whether the accounts of the taxpayer are kept and his returns filed upon the accrual basis or upon the cash receipts and disbursements basis. Section 131 (d) allows the taxpayer, at his option and irrespective of the method of accounting employed in keeping his books, to take such credit for taxes as may be allowable in the return for the year in which the taxes accrued. An election thus made under section 131(d) or under section 222(c) or 238 (c) of the Revenue Act of 1924 or 1926, or under section 131 (d)↩ of the Revenue Act of 1928, 1932, 1934, 1936, or 1938, must be followed in returns for all subsequent years, and no portion of any such taxes will be allowed as a deduction from gross income.